**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SYEED MACKLIN | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 24-2215** |
| | : | |
| AMERICAN ONCOLOGIC | : | |
| HOSPITAL, INC., *d/b/a* | : | |
| FOX CHASE CANCER CENTER | : | |

McHUGH, J.                                                        December 4, 2025

## MEMORANDUM

Pennsylvania addresses the fair compensation of workers through its Minimum Wage Act (PMWA), a statute that sometimes tracks but sometimes exceeds the protections established by the federal Fair Labor Standards Act (FLSA). The question here – presented solely as a matter of state law – is how must an employer calculate the rate of overtime pay when an employee who earns an hourly wage also earns a flat rate bonus; specifically, how should the employer calculate the overtime pay due on that bonus?

Plaintiff Syeed Macklin worked as an orderly for Defendant American Oncologic Hospital (AOH), receiving hourly pay and in some instances a flat rate bonus. The PMWA requires that employees be paid at least at 1.5 times the employee's regular rate of pay for every hour worked above 40 hours in a work week, but the parties dispute how that should be calculated when applied to the flat rate bonus. The statute does not directly answer the question, and no regulations issued by the Pennsylvania Department of Labor and Industry specifically address the pay structure at issue in this case.

The issue involves a pure issue of law, framed by Defendant's motion to dismiss. Sitting in diversity in such a case of first impression, a district court must predict how the Supreme Court

of Pennsylvania would resolve the issue.  Both sides advance cogent arguments, but on balance Plaintiff's analysis better reflects Pennsylvania's approach to such issues.  The motion to dismiss will therefore be denied.

## I.    Factual and Procedural Background

Macklin worked for three years as an orderly at AOH.  Compl., ECF 1-1 ¶¶ 17-21.  He earned $17.53 per hour, a shift differential of $2.1036 per hour for overnight work,[1] and a bonus of $100 when he worked a shift of twelve hours or longer.  Df.'s Br., ECF 15-1, at 9.

As to this claim,[2] Macklin alleges that AOH underpaid the overtime due on the bonus by dividing the $100 by all hours worked to find an hourly rate, then multiplying that rate by *0.5* to determine his extra pay per overtime hour. Instead, he contends, for each overtime hour he should have received 1.5 times the hourly rate on the supplemental bonus.  Compl., ECF 1-1 ¶¶ 36-40. He seeks to recover the difference between the 0.5 multiplier and the 1.5 multiplier for himself and a putative class of other workers who have been subject to the same pay policies.  AOH disagrees, and contends it was correct to multiply the hourly rate on the $100 bonus by 0.5 to calculate Macklin's extra pay, because Macklin's approach amounts to double counting.

## II.    Standard of Review

In the Third Circuit, motions to dismiss under Rule 12(b)(6) are governed by the well-established standard in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-210 (3d Cir.  2009).  In addition to factual plausibility, motions to dismiss test "legal sufficiency…whether the plaintiff

---

[1] A shift differential is extra hourly pay for work done during certain shifts, such as overnight work here. *See, e.g.*, *Corning Glass Works v. Brennan*, 417 U.S. 188, 192 (1974).  Shift differentials are generally included in the regular rate of pay for overtime purposes, as they are here.  *See, e.g.*, 29 C.F.R.  § 778.207.

[2] Macklin also filed a claim based on AOH's timekeeping practices, which AOH has not moved to dismiss.

would be able to prevail even if she were able to prove all of her allegations." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006).

## III.    Discussion

### A.  Background: The Pennsylvania Minimum Wage Act

The PMWA requires all covered workers to be paid overtime for every hour over 40 they work in a workweek.  43 Pa. Con. Stat. § 333.104(c).[3]  That overtime pay must be at least "one and one-half times the employe[e]'s regular rate as prescribed in regulations promulgated by the secretary" of the Pennsylvania Department of Labor and Industry (DLI).  *Id.*

DLI's regulations explain how to calculate a worker's overtime payments: by translating a worker's pay into an hourly rate, then making sure the overtime pay comes out to 1.5 times that regular rate for every hour of overtime work.  The regular rate is calculated according to 34 Pa. Code § 231.43 (the Regular Rate Rule).  Section 231.43(a) gives what I term the Default Method: "the regular rate at which an employee is employed shall be deemed to include all remuneration for employment paid to or on behalf of the employee," with certain exceptions.  34 Pa. Code § 231.43(a).  This means combining all relevant pay together and dividing by all the hours worked in the workweek, giving the "regular rate" of money earned per hour worked.[4] [5]  After finding that

---

[3] A "workweek" is "a period of 7 consecutive days starting on any day selected by the employer." 34 Pa. Code. § 231.42.

[4] The PMWA and its regulations do not actually say what to divide the combined pay *by* to get the regular rate, except for salaried workers after a 2022 DLI rulemaking.  *See* 52 Pa. Bull. 2701 (May 7, 2022).  The Pennsylvania Superior Court has settled on all hours worked as the default divisor in the equation by inferring the same term appeared in the Fair Labor Standards Act.  *See Chevalier v. Gen. Nutrition Centers, Inc.*, 177 A.3d 280, 298 (Pa. Super. Ct. 2017), *aff'd* 220 A.3d 1038 (Pa. 2019*)*.

[5] The rest of the Regular Rate Rule's subheadings lay out various other ways to calculate the regular rate and overtime for specific other forms of pay, including, relevant for purposes of this motion: daily, flat rate payments known as "day rates" (§231.43(b)), *which get a 0.5 premium multiplier*; voluntary extra pay that reduces an employer's overtime obligation and is excluded from the regular rate (§231.43(e)); and regular

3

regular rate, 34 Pa. Code § 231.41 (the Overtime Rate Rule) reiterates that "each employee shall be paid for overtime not less than 1-1/2 times the employee's regular rate of pay for all hours in excess of 40 hours in a workweek."

A simple example shows how this process works in practice. Suppose a worker earns $10 per hour and works 50 hours in a workweek. The worker's base hourly pay is:

$10 x 50 hours = $500 **base hourly pay**

For overtime purposes, the worker's regular rate is the $500 divided by all his hours worked:

$500 / 50 hours = $10/hour **regular rate**[6]

Since the worker worked 50 hours, 10 of those hours are overtime. For each one of those ten overtime hours, the Overtime Rate Rule says that their pay must be 1.5 times the regular rate:

1.5 x $10 = $15/hour **overtime rate for each overtime hour**

Importantly, this overtime rate can either be calculated as **total payment** (the *combined* regular rate plus the overtime) or as the separate **overtime premium** (the amount of *extra* pay *on top of* the regular payment). When viewing overtime as a total payment, accounting for it entails metaphorically stopping the regular rate calculation at 40 hours of work and counting each hour after that at the 1.5 times overtime rate. Here:

$10 [regular rate] x *40* [regular rate hours] = $400 **pay due on regular rate time**
$15 [overtime rate] x *10* [overtime hours] = $150 **pay due on overtime hours**
$400 + $150 = $550 **total pay due**

---

rate for salaried employees (§231.43(g)), which is divided by 40 hours and *not* all hours worked, as per rulemaking by DLI in 2022.

[6] Granted, this regular rate is the same as the hourly pay in the previous step. This often not the case when multiple types of pay come into the equation, but this is just a simplified illustration.

In contrast, when discussing overtime as the overtime *premium*, the regular rate clock stays running for all hours worked, and the extra pay comes from applying a 0.5 multiplier on the regular rate to find the *extra* amount; combining that 0.5 *premium* with 1.0 times the regular rate will generally get the worker to 1.5 times the regular rate:

$10 x 50 [total hours] = $500 **regular rate pay** [on all 50 hours worked]
0.5 x $10 = $5 **overtime premium per overtime hour**
$5 x 10 [overtime hours] = $50 **total overtime premium** [extra pay for 10 overtime hours]
$500 + $50 = $550 **total payment**

As seen here, the two approaches usually give the same result. In some cases, however, courts interpreting the PMWA have required a *heightened premium multiplier* of 1.5 on flat rate salaries, in effect paying 1.5 times the regular rate for each overtime hour *on top of* the existing pay.[7] For the flat rate bonus, Macklin seeks such a heightened multiplier, which I will refer to as a "1.5 premium multiplier," keeping the focus on the amount of extra payment due per hour; likewise, AOH favors the default rule, which I will refer to as a "0.5 premium multiplier."

The cases requiring a 1.5 premium multiplier mostly dealt with salaried workers who receive a fixed weekly paycheck for non-fixed hours, an arrangement known as the Fluctuating Work Week (FWW). The authoritative FWW case is *Chevalier v. General Nutrition Centers*¸ 220 A.3d 1038 (Pa. 2019). There, a class of store managers who were paid a flat rate salary and commissions for fluctuating hours argued that applying a 0.5 premium multiplier on their wages did not satisfy the PMWA, because the regulation defining the Regular Rate Rule allowed for a

---

[7] *See, e.g.*, *Verderame v. RadioShack Corp.*, 31 F. Supp. 3d 702, 707 (E.D. Pa. 2014) ("Applying the '1 ½ times' language of section 231.43(d)(3) to the $600 [pay] for a 50–hour workweek example yields the following results. The regular rate as described in RadioShack's compensation plan ('the agreement') is calculated at $600/50hrs., which equates to $12/hr. The plain language of section 231.43(d)(3) then instructs that $12/hr. be multiplied by '1 ½ times.' This results in an *overtime premium of $18 for every hour over forty*, and a *total salary of $780* for the week.")(emphasis added).

0.5 premium multiplier only in situations involving compensation by day rate. In every other instance a multiplier of 1.5 was specified. Of note, the 0.5 multiplier for day rate employees mirrored a federal guideline, suggesting to the Supreme Court in *Chevalier* that, by copying only one federal rule, DLI was deliberately rejecting others. *Id*. at 1049-51.   The Pennsylvania Supreme Court concluded that PMWA's public policy supported a higher multiplier, leading it to hold that in calculating overtime for salaried workers with fluctuating hours, employers must combine all pay into the regular rate, divide by all hours worked, multiply the resulting regular rate by 1.5 to get the overtime rate, and then pay that full overtime rate for each hour over 40.  *Id*. at 1051-1058.

*Chevalier* comports with the conclusion reached by a former member of this Court in *Verderame v. RadioShack Corp*, 31 F. Supp. 3d 702 (E.D. Pa. 2014). And two judges of the Western District of Pennsylvania had previously reached the same conclusion as *Verderame*. *See generally Cerutti v. Frito Lay, Inc.*, 777 F.Supp.2d 920 (W.D. Pa. 2011); *Foster v. Kraft Foods Global, Inc.*, 285 F.R.D. 343 (W.D. Pa. 2012).

In a further show of its influence, *Chevalier* also prompted some limited clarification from DLI. The Pennsylvania Supreme Court pointed out that the Regular Rate Rule did not say what number an employer should divide total pay by to reach the regular rate, 220 A.3d at 1045, and upheld the Superior Court's conclusion that the regular rate was based on total pay divided by all hours worked, not by 40 hours.  *Id.* at 1052. In response, in 2022 DLI clarified that the regular rate for salaried employees working fluctuating hours is total pay divided by 40 hours, not total pay divided by all hours worked.  *See* 52 Pa. Bull. 2701, 2714 (May 7, 2022) (Adding subheading that "[t]he regular rate for salaried employees who are not exempt from overtime is the amount of remuneration determined under subsection (a) divided by 40 hours.").   In addition to filling the regulation's previous gap, DLI explained that dividing total pay by 40 hours created predictability

for employees with fluctuating hours, "consistent with the act's remedial purpose of protecting these salaried workers from unreasonably low wages." *Id.* at 2706. While this regulation brought some more clarity around salaried workers, substantial gaps in the PMWA remain unaddressed by DLI's regulations and interpretations, leading to hard legal questions like those in this case.

    *B. Parties' Arguments*

    If AOH correctly calculated the overtime rate, its motion to dismiss must be granted. The answer depends on whether it was appropriate for AOH to combine the bonus into his combined regular rate and then calculate the total overtime using a 0.5 multiplier, or whether the 1.5 multiplier must be separately applied to Macklin's bonus to reach the statutorily required 1.5 total overtime rate. This is a pure question of law.

    <u>i. The formula proposed by AOH</u>

    AOH argues that it followed DLI's regulations when calculating Macklin's overtime: first, it combined all his pay, including the bonus, and divided it by all hours worked to find his regular rate; second, it multiplied that regular rate by 1.5 to determine the total compensation (regular rate plus premium) that it owed Macklin for his overtime hours; third, it paid a 0.5 premium for each overtime hour, assuming that "1.0 of the 1.5 multiplier already has been incorporated into the 'straight time' calculation." Df.'s Reply, ECF 23, at 8. Because both parties agree that the bonus is considered in calculating the regular rate, AOH posits it is entirely sound to multiply that regular rate by 1.5 and then pay the required 0.5 premium to comply with the statute. *Id.* at 6. AOH points to *Chevalier*'s language that the default overtime multiplier rule is "fairly straightforward" for "hourly employees" since it merely requires multiplying their rate by 1.5. *Id.* at 3 (quoting *Chevalier*, 220 A.3d at 1040). Relatedly, AOH argues *Chevalier* and other cases calling for a 1.5

premium multiplier are inapplicable here because they all dealt with the FWW method, not (primarily) hourly pay. *Id.*

Necessarily, AOH's position depends on the premise that Macklin is properly classified as an hourly employee, notwithstanding the non-hourly bonus. Df.'s Br., ECF 15, at 4-8. Their main support for that classification comes from one opinion in a long-running, multi-state, class action case in the Western District of Pennsylvania, *Reinig v. RBS Citizens, N.A.*, No. 2:15-CV-01541, 2024 WL 3676758 (W.D. Pa. Aug. 6, 2024). In *Reinig*, the plaintiffs received hourly pay as well as commissions, and the plaintiffs sought a heightened 1.5 premium multiplier on the commissions. *Id.* at *2. The court there declined to apply *Chevalier* to the plaintiffs' commission because *Chevalier* directly applied only to employees receiving salaries; to apply its reasoning to "hourly" employees' non-hourly pay would be to stretch the law in a situation where the court felt the issues relevant to *Chevalier* were not present. *Id.* at *10.[8]  AOH sees *Reinig* as "clear and unequivocal" proof "that *Chevalier* does not and cannot have any application to the calculation of overtime amounts for hourly employees, even if they receive fixed amounts on top of their hourly wages. Df.'s Reply, ECF 23, at 5. In effect, AOH asks, since hourly pay makes "straight time" a simple concept, how can a little bonus make "time-and-a-half" ambiguous? As discussed below, I respectfully disagree with the conclusion that "an increase in money paid" solves "the problem" with a declining regular rate for mostly hourly employees who receive non-hourly pay.

---

[8] "[In *Chevalier*,] [t]he problem with the fluctuating work week calculation for salaried employees is that the more an employee works, the lower the employee's regular rate. Here, however, in the case of hourly employees, the converse is true. An increase in hours worked results in an increase in money paid. The Court agrees with Citizens that *Chevalier* should not be extended past its holding. Accordingly, Citizens is entitled to summary judgment."

ii. The formula proposed by Macklin

In response, Macklin asserts that "*Chevalier*'s reasoning applies with equal force to all forms of non-hourly compensation, including the flat-rate bonuses at issue here." Pl.'s Resp., ECF 19, at 2. Specifically, Macklin sees the same ambiguity in this case that propelled *Chevalier* to the Pennsylvania Supreme Court: how to calculate the overtime multiplier on non-hourly forms of pay. *Id.* at 10. Considering that the court in *Chevalier* stressed the PMWA's public policy goal of raising wages and DLI's adoption of some federal regulations but not the ones the employer preferred, Macklin argues that where competing interpretations of an ambiguous portion of the PMWA result in different multipliers, the higher paying one is likely closer to the PMWA's aims. *Id*. at 11-13. Macklin contends that when DLI adopted some federal regulations verbatim, but not the one explicitly blessing AOH's approach,[9] it was "demonstrat[ing] an intent to reject the application of a .5 [premium] multiplier" in favor of a 1.5 premium multiplier, just like in the flat rate (salary) payment in *Chevalier*. *Id*. at 12-13. Pointing to prior district court opinions all concluding that the multiplier in FWW cases must be 1.5, Macklin concludes that there is no legally meaningful difference between the salary in those cases and the flat rate bonuses here. *Id.* at 13-15.

C. *Addressing a Question of First Impression*

This is a question of first impression. The parties have not cited nor has the Court identified any decision that addresses how to calculate overtime for a worker paid in the same workweek

---

[9] 29 C.F.R. § 778.110 provides a 0.5 premium multiplier for employees making both hourly wages and bonuses.

with both hourly and non-hourly pay under the PMWA.[10]  When "there [is] no reported decision by the Pennsylvania Supreme Court or any other Pennsylvania court addressing the precise issue before [this Court], it [is] the duty of the District Court to predict how the Pennsylvania Supreme Court would [rule] if presented with this case."  *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000)).  To make this prediction, a district court may "consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 230 (3d Cir. 1992) (quoting *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir. 1980).  Importantly, federal courts must be vigilant not to allow removal to undermine state law.  As Justice Frankfurter admonished: "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a state court. The nub of the policy that underlies *Erie R.[R.] Co. v. Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a state court a block away, should not lead to a substantially different result." *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945).

The PMWA poses a particular challenge, because "unlike the federal system which includes detailed regulations addressing numerous compensation structures, Pennsylvania's Secretaries of Labor and Industry have provided very limited guidance as to how to convert the generic overtime compensation formula to other compensation methods." *Chevalier*, 220 A.3d at

---

[10] In fact, it appears only one case has interpreted application of the multiplier in a case where the method of compensation made use of both hourly and non-hourly components. *See Reinig v. RBS Citizens*, *Reinig v. RBS Citizens, N.A.*, No.  2:15-CV-01541, 2024 WL 3676758 (W.D. Pa. Aug. 6, 2024).

1051.  For that reason, particular care must be paid to decisions from Pennsylvania courts as to how the statute should be applied, to include such cases as *Chevalier* and *Bayada Nurses, Inc. v. Com., Dep't of Lab. & Indus.*, 8 A.3d 866 (Pa. 2010).

Also pertinent is the Pennsylvania Statutory Construction Act, 1 Pa. Con. Stat. §§ 1501-1991, which the Pennsylvania Supreme Court follows "[i]n all matters involving statutory interpretation." *Commonwealth v. Kingston*, 143 A.3d 917, 922 (Pa. 2016).  The Statutory Construction Act states that effectuating the intent of the General Assembly is the goal of statutory interpretation.  1 Pa. Con. Stat. § 1921(a).  To find intent, the unambiguous text of a statute governs.  1 Pa. Con. Stat. § 1921(b).  But where the text is ambiguous, courts should weigh various contextual clues to infer the General Assembly's intent.  1 Pa. Con. Stat. § 1921(c).

### D.  Ambiguities in the application of the PMWA in this case

Both parties' arguments are reasonable, but not entirely persuasive given PMWA's sparse and indeterminate language.  Although the PA Statutory Construction Act instructs that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit," 1 Pa. Con. Stat. § 1921(b), neither the statutory language nor comparatively limited precedent definitively favor either side.

### i. AOH's reading is reasonable but lacks definitive support

AOH's reading is plausible.  First, the plain text of the PMWA Overtime Rate Rule suggests that *total* overtime payment is meant to be 1.5 times the regular rate, which in turn suggests a 0.5 premium multiplier should be acceptable here.  Relatedly, it is reasonable for AOH to want to classify Macklin as an "hourly" employee given he appears to have received most of his pay via hourly wages, unlike the salaried workers in the FWW cases.  Even in *Chevalier* the

parties agreed to combine the different types of compensation into one regular rate and determine one overtime multiplier for the combined rate. *See* 220 A.3d at 1042 n.7.

Yet AOH's reading sits uneasily with the PMWA's text as applied by various courts. First, under *Chevalier,* and decisions like *Verderame* and *Cerutti*, there are clearly some instances where reaching the required 1.5 does require a 1.5 premium multiplier; AOH's reading would seem to permit a 0.5 multiplier in every case. In this way, it is almost the same argument made by the defendants in *Chevalier* that the Overtime Rate Rule always permits a 0.5 premium multiplier since 1.0 is already included. *See Chevalier*, 220 A.3d 1038, 1042-43 (Recalling that at trial "GNC claimed that under Plaintiffs' formulation salaried employees would receive two and one-half times their regular rate of pay because the salary provides the initial payment for each hour worked and employees would then receive an additional 1.5 times for every hour worked in excess of forty").

Another problem is that the definition of "hourly employee" is not as straightforward as AOH argues it is. To start, on its face, AOH's pay structure explicitly incorporates both and hourly and non-hourly component. Simply proclaiming that it is no different than a strictly hourly system does not make it so. Moreover, the PMWA and its overtime regulations never strictly define an "hourly employee," and it is unclear which combinations of pay an employee could receive and still receive the overtime rate AOH argues for. While *Chevalier* says determining overtime is simple for employees "who are paid on an hourly basis," that single phrase in the opinion seems to refer to employees paid *only* an hourly rate,[11] because the following sentences discuss how employees are sometimes paid "salaries, commissions, payment based on the work completed, or

---

[11] This is illustrated by the simple numerical example set forth at the outset of the discussion.

a combination of these compensation methods," which "do not always easily convert to the hourly structure of the generic overtime formula." *Chevalier*, 220 A.3d at 1051. AOH would surely counter that in this case, the hourly-plus-bonus payment *does* easily convert; but by that logic so does every other structure, because it is always possible to combine all compensation and divide it by hours worked.[12] It is unclear where the PMWA and the Pennsylvania Supreme Court would draw the line between straightforward "hourly" employees and more complex compensation arrangements.[13]

A further problem for AOH is that in *Chevalier* the Pennsylvania Supreme Court held that, once the flat rate salary and the commissions were combined into a single regular rate, the higher 1.5 premium multiplier applied to the *combined* rate. 220 A.3d at 1042 n.7.[14] In contrast, AOH combined the rates and then applied the default 0.5 premium multiplier on the combined rate. Df.'s Br., ECF 15, at 8-10. This is problematic because as I conclude below, the flat rate bonus, like the salary in *Chevalier*, would warrant a 1.5 premium multiplier if it stood on its own.

---

[12] For salaried workers, following DLI's 2022 rulemaking after *Chevalier,* that is 40 hours.

[13] DLI's 2022 regulation does not resolve this uncertainty, despite AOH's argument otherwise. DLI maintains a webpage with frequently asked questions (FAQs) about the 2022 regulation. *See* Pa. Dept. of Lab. & Indus., *Overtime and Tipped Worker Rules in PA* (last visited November 24, 2025), https://www.pa.gov/agencies/dli/resources/compliance-laws-and-regulations/labor-management-relations/labor-law/overtime-and-tipped-worker-rules-in-pa .

This FAQ section states in part that the 2022 DLI rule "will not change overtime pay calculations for hourly employees." *Id*. At oral argument, AOH argued that exclusion supported their claim that Chevalier does not support paying a 1.5 overtime premium multiplier for the non-hourly bonuses of "hourly" employees like Macklin, since DLI's regulation was explicitly based on *Chevalier* and because it announced no changes for "hourly" employees. *See* Oral Arg. Tr., ECF 46, 17:6-23, 18:3-13 (Oct. 27, 2025). But this FAQ section still does not define whether "hourly worker" encompasses employees paid by a combination of hourly and flat rate. Nor does the final rule itself address this. *See generally* 52 Pa. Bull. 2701 (May 7, 2022). For this reason, I am unpersuaded.

[14] Macklin, however, has not sought a heightened multiplier on the combined regular rate.

That said, neither *Chevalier* nor any other case presents a combination of pay, within the same workweek, which, on their own, would require different multipliers. This is the problem with AOH's heavy reliance on the *Reinig* summary judgment decision.  In an earlier decision, the Western District in *Reinig* opted to separately consider the overtime due on the plaintiffs' hourly pay and the overtime due on their commissions, because the commissions were paid out to employees well after the relevant workweek and thus fell outside the PMWA's definition of the regular rate for overtime purposes.  *See Reinig v. RBS Citizens, N.A.*, No. 2:15-CV-01541, 2023 WL 5497106, at *6 (W.D. Pa. Aug. 25, 2023). This wrinkle alone distinguishes *Reinig* from this case, where both sides have agreed the hourly pay and the bonus both go into the same regular rate, and the relevant issue is deciding which overtime multiplier to apply.  In addition,  *Reinig* runs into the same limitations I find here: the 2024 decision on which AOH relies found a 0.5 premium multiplier appropriate for both the hourly and commission pay because the employees were "hourly." 2024 WL 3676758 at *10. Yet the *Reinig* court does not explain what defines an "hourly" employee or why receiving hourly wages makes a 0.5 premium multiplier appropriate on non-hourly pay. Without more reasoning supporting its conclusions, *Reinig* lacks persuasive force. In that case and here, taking a broad and inclusive definition of hourly employees may be superficially appealing, but finds little compelling support in any relevant authority.

ii. Macklin's Reading also lacks dispositive support

Yet the same uncertainties in the PMWA and *Chevalier* also pose problems for Macklin. First, the fact that the parties and the court there all agreed to combine the rates and apply one multiplier begs the question of where Macklin finds authority to consider them separately here. And regarding the key passage in *Chevalier*—about when the appropriate multiplier is easy or hard to determine—Macklin reads too much into the Court's reference to "combination[s]" of

14

other pay rates: where the Court talks about "a combination of *these* compensation methods," it is simply unclear whether use of the word "these" reaches back to hourly wages discussed a few sentences before. *Chevalier*, 220 A.3d at 1051. And is it necessarily the case, as Macklin assumes, that hourly pay can only be considered straightforward to calculate where it is hourly pay alone that forms the basis for compensation? Neither *Chevalier* nor the PMWA's text answer these questions.

Besides the blurry line around "hourly employees," *Chevalier* does not necessarily suggest that all non-hourly pay structures except day rates are entitled to a 1.5 multiplier, as Mackin argues. Pl.'s Resp., ECF 19, at 2. Moreover, there is no mathematical obstacle to what AOH proposes because an employer can certainly add everything together, divide by the appropriate number of hours, and then multiply by 0.5 to find a premium that amounts to 1.5 times the regular rate. The Supreme Court clearly held that such an approach is inappropriate for salaried workers, but did not explain why. *Chevalier* may provide clues but does not provide definitive answers.

### iii. The PMWA provides limited interpretive guidance

The PMWA is not easily applied because the law's text and regulations leave significant gaps for interpretation. The PMWA has received far less administrative guidance and interpretation than the FLSA, which lays out various scenarios for reaching the statutory 1.5 times the regular rate for different compensation structures. What *Chevalier* describes as "very limited guidance" forces courts to interpret omissions and grey areas: where did the DLI and General Assembly *intend* to differ from the federal guidelines, and where does inaction simply reflect inertia? This case's central question is one such grey area, as the PMWA gives no guidance on what to do when two sources of compensation go into the same regular rate, but each have a different multiplier on their overtime calculation. Here, as in *Chevalier*, "both parties use the

Secretary's silence in this regard as an indication of the adoption of their constructions." 220 A.3d at 1058.

*E.  The PMWA Requires a 1.5 Multiplier on the Flat Rate Bonus*

When "[b]oth parties have legitimate interpretations of the ambiguity created by the regulatory void," a court must "look to the rules of statutory construction" and discern which reading best fits the General Assembly's intent.  *Chevalier*, 220 A.3d at 1052.  When a statute's text is ambiguous, the Statutory Construction Act calls on courts to consider, among other things, "the occasion and necessity for the statute. . .the mischief to be remedied. . .the former law, if any, including other statutes upon the same or similar subjects, the consequences of a particular interpretation," and "legislative and administrative interpretations of such statute." 1 Pa. Con. Stat. § 1921(c).  In *Chevalier*, the Court focused on the PMWA's "history and structure." 220 A.3d at 1052.

Considering the PMWA's structure, history, and what limited administrative guidance exists, Macklin's proposed 1.5 multiplier is more consistent with the PMWA's public policy.

i.  The PMWA's structure supports Macklin's pleading

First, the structure of the PMWA itself is not decisive, but DLI's administrative interpretation and the principle of reading related statutory sections together weigh toward applying a 1.5 premium multiplier.

Macklin points out a discrepancy between the PMWA and federal FLSA, as existed in *Chevalier*.  There, the Pennsylvania Supreme Court found it persuasive that DLI had adopted some federal regulations verbatim, but not the regulations that provided for the overtime formula the defendants there sought.  *See Chevalier*, 220 A.3d at 1058-59.  Specifically, the court noted that DLI had adopted one overtime structure for fixed payments and required a 1.5 multiplier on the

regular rate in that pay system but had not adopted a corresponding federal guideline that permitted a 0.5 multiplier.  *Id.*   Additionally, DLI had adopted a 0.5 multiplier for flat day rates, but everywhere else had required a 1.5 multiplier. *Id.*

Here, Macklin points out there is a federal regulation endorsing AOH's approach, and DLI has not adopted that either.  *See* Pl.'s Resp., ECF 19, at 12-13.[15]  It is worth noting that the federal rule supporting AOH's reading was issued in 1968.  *See* 29 C.F.R.  § 778.110(b); 33 FR 986, 990 (Jan. 26, 1968).  Meanwhile, Pennsylvania adopted PMWA's regular rate rules in 1977, copying one federal rule, the day rate rule, verbatim, but did not adopt any others; other courts have interpreted this selective copying as DLI setting aside the federal rules it did not adopt.  *See Verderame*, 31 F.Supp.3d at 708 n.3 ("it appears the department made a conscious decision to explicitly adopt the "half-time" language of the federal regulation for day rate employees, without doing so for employees covered by section 231.43(d)."); *see also Friedrich v. U.S. Computer Servs.*, Inc., 833 F.Supp. 470, 476 (E.D. Pa. 1993)("The fact that § 231.43(b) is analytically identical to the two federal regulations [at issue in that case]—and exactly identical to one of them, § 778.112—indicates that the Industrial Board of the Department of Labor and Industry knew about the federal regulations when drafting the state regulations.").[16]

---

[15] "As in *Chevalier*, the PA DOL Secretary's decision to adopt some of the calculation methods provided by the federal regulations, including one expressly permitting overtime to be calculated using a 0.5 multiplier, *see* 29 C.F.R. § 778.112, but not the method that AOH argues for, *see* 29 [C.F.R.] § 778.110(b), demonstrates an intent to reject the application of a 0.5 multiplier in Section 778.110(b)'s method in favor of applying a 1.5 multiplier."

[16] One justice in *Chevalier* refused to attach significance to DLI's failure to adopt:  "There is nothing for this Court to glean from the [DLI's] abdication of the responsibility conferred on it by the General Assembly [to make overtime rules for the pay structure at issue], other than that it did so abdicate." 220 A.3d at 1061 (Donohue, J., concurring and dissenting).

AOH is not completely devoid of regulatory support. The Default Method in §231.43 (a), applied the way AOH says they applied it, already permits a 0.5 premium multiplier in at least some cases, and could be deemed the default treatment of a "combination" regular rate like Macklin's. This is a stronger structural argument than what the defendant in *Chevalier* could muster. That said, the explicit and unique presence of the 0.5 premium multiplier in the day rate rule, but not elsewhere, weighs against extending it.  The day rate rule in §231.43(b) discusses 0.5 "on top of" the regular day rate. 34 Pa. Code §231.43(b).  The Superior Court in *Chevalier* found it telling that DLI adopted such a 0.5 premium multiplier there but not elsewhere, including when covering the employees covered in that case; to read the statute as a whole, the court rejected the defendant's suggestion to read the 0.5 in the day rate rule as announcing the same rule as the default rule.  *See Chevalier v. Gen.  Nutrition Centers, Inc.*, 177 A.3d 280, 302 (Pa. Super. Ct. 2017)("Had the Department wanted to authorize one-half time payment for employees such as plaintiffs here, it surely knew how to do so"); *Chevalier*, 220 A.3d 1038 at 1058 (adopting the structural argument that the 0.5 premium multiplier in the day rate rule is an outlier); *see also Verderame*, 31 F.Supp.3d at 707 ("Although section 231.43(b) pertains to a flat sum for a day's work, and not, as here, a fluctuating workweek, the language used.  .  .certainly illustrates the regulatory [body's] willingness to set out 'one half' overtime standards.").  Later, writing in direct response to the Supreme Court of Pennsylvania's *Chevalier* opinion, DLI's 2022 Final Rule confirms that the Day Rate Rule's 0.5 premium multiplier is an "outlier" because "it is the only subsection to use a 0.5 multiplier than a 1.5 multiplier on overtime hours." 52 Pa.  Bull.  2701, 2704-05 (May 7, 2022).

Although all these authorities are discussing salaries, not hourly or "combination" pay systems, they do so by interpreting the overall Regular Rate Rules and their corresponding

overtime rates. Namely, they suggest that the PMWA's requirement to pay 1.5 times the regular rate is not a call to pay 0.5 times the regular rate *on top of* the regular rate, where the payment at issue is a flat rate other than a day rate.[17] This reading fits with the Statutory Construction Act's mandate to read parts of statutes "together, if possible, as one statute" when the separate texts are *in pari materia*, "relat[ing] to the same persons or things or to the same class of persons or things." 1 Pa. Con. Stat. § 1932. Similarly, the Supreme Court of Pennsylvania has called it a "basic rule of construction" that "when a rule or statute uses different words, it is presumed the words have different meanings." *Shirley v. Pennsylvania Legislative Reference Bureau*, 318 A.3d 832, 849 (Pa. 2024). Construing the 0.5 multiplier in §243(b) in the context of § 231.43 as a whole, I find no way to exclude the flat rate bonus here from the 1.5 premium multiplier that the Pennsylvania Supreme Court and DLI have said is the default.

This interpretation comports with the general principle that payments that are counted in the regular rate should not count again in the calculation of overtime. The PMWA requires a divide between the regular rate and overtime paid based on it: the Default Method in § 231.43(a) includes all pay in the regular rate except for non-statutory overtime and other agreements about basic rates in other subheadings. Specifically, under §231.43(a)(5)-(7), payments employers make at a premium rate for working extra hours are not counted in the regular rate, but rather counted against the company's overtime obligations. This section mirrors almost exactly the regular rate provision in the FLSA statute, which in *Hickman v. TL Trans*, 318 F.Supp.3d 718, 721-22 (E.D.

---

[17] As for hourly-only wages, the illustration in Section III(A), *supra*, shows how multiplying such wages' regular rates by 1.5 yields the same result as adding a 0.5 premium multiplier. *I.e.*, 1.5 x 10 = 15 is the same as 10 + (0.5 x 10) = 15.

Pa., 2018) I construed as requiring a strict divide between payments counted in the regular rate and payments due as overtime *based on* the regular rate.[18] In *Hickman*, the plaintiff-employees prevailed on their claim that flat rate, predetermined "overtime" payments could not count against the overtime due on their work; their overtime pay had to be based on, and paid according to, the actual hours worked.[19] Treating overtime as an hourly premium, separate from the regular rate and based on a multiplier of the regular rate, serves the legislative goal of "ensur[ing] that an employer internalizes the cost of each hour of overtime an employee works in a week." *Id.* at 724.

This principle of separation offers one reason why a 1.5 premium multiplier is required for flat rate payments but not hourly pay. Technically, regular rate pay on fixed payments should stop at 40 hours, lest it cut into the overtime—even when the regular rate is calculated based on all hours worked.[20] Past 40 hours, overtime due on fixed pay comes due at the rate of 1.5 times the regular rate per hour, and no part of the regular rate (fixed) pay can count against that overtime burden. The result may look like the employee getting "1.0" of his pay from his regular rate work

---

[18] The general proposition that the PWMA and FLSA have similar policy goals with respect to the importance of treating regular and overtime differently is in part reflected by the DLI's verbatim adoption of statutory language from the FLSA as a binding regulation under the PWMA. *Compare* Pa. Code § 231.43(a) *with* 29 U.S.C. § 207(e). As with other parallel provisions, Pennsylvania adopted these rules later: this rule was part of DLI's 1977 rulemaking, while the federal provision was first added to the FLSA in 1949. *See* Fair Labor Standards Amendments of 1949, Pub. L. No. 81-393, 63 Stat. 910 (1949). Incorporating the federal law's language almost exactly supports a conclusion that they aim for the same policy, namely the separation of regular rate pay and overtime pay.

[19] Although *Hickman* was a case under the federal FLSA, FLSA law can be "interpretive guidance" in understanding the PMWA where the PMWA substantially parallels the FLSA because the statutes share similar purposes. *Commonwealth v. Stuber,* 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), aff'd sub nom. 580 Pa. 66, 859 A.2d 1253 (2004); *see also Resch v. Krapf's Coaches, Inc.,* 785 F.3d 869, 871 n.4 (3d Cir. 2015) *Mazzarella v. Fast Rig Support*, LLC, 823 F.3d 786, 790 n.5 (3d Cir. 2016) .

[20] *See* Chevalier, 220 A.3d at 1058 (Requirement to pay 1.5 times the regular rate, "mechanically applied," requires "'all hours in excess of 40' to be paid at 1.5 times the regular rate, regardless of whether the regular rate was calculated based upon the actual hours worked").

during overtime hours, and then getting another 1.5 times that regular rate as an overtime premium, but in the statutory scheme it is merely a way of paying the employee for regular rate time with their regular rate pay, and then calculating overtime pay using their overtime rate. Applying the same method to hourly wages, of "stopping the regular rate clock" at 40 hours and applying a 1.5 multiplier, results in a payment that is the same as the lower 0.5 premium multiplier. AOH is therefore mistaken to argue that the law allows them to count the share of the $100 paid out past the fortieth hour of the week as part of the "1.0" of the PMWA's required 1.5 overtime payment. All these structural principles support Macklin's claim that non-hourly wages generally require a 1.5 premium multiplier to reach the statutory requirement.

ii.  The PMWA's history confirms its public policy of exceeding federal guidelines

Further support for Macklin's position comes from the public policy and historical context of the PMWA. The Statutory Construction Act provides that "The title and preamble of a statute may be considered in the construction thereof," 1 Pa. Con. Stat. § 1924. So may the "occasion and necessity" of a statute, and "The former law, if any, including other statutes upon the same or similar subjects." *Id*. at § 1921. For the PMWA, these considerations all point to providing greater coverage than the FLSA and greater disincentive to overtime.

First, the PMWA's preamble states a strong desire to raise workers' pay and protect employees from exploitation. *See* 43 Pa. Con. Stat. § 333.101. The Pennsylvania Supreme Court has referred to this as the General Assembly "fervently indicating" the General Assembly's intent "to increase employee wages," and as authority for the PMWA to exceed federal standards where the two laws differ. *In re Amazon.com*, Inc., 255 A.3d 191, 201 (Pa. 2021). *See also Bayada Nurses, Inc.*, 8 A.3d at 883 (Pa. 2010) ("[I]t is permissible for a state to enact more beneficial wage and hour laws. Indeed, the federal statute establishes only a national floor under which wage

21

protections cannot drop, but more generous protections provided by a state are not precluded"). *Chevalier* also considered the preamble when deciding between two interpretations of the overtime law, holding the strong language reflected "[t]he occasion and necessity for the statute" and "[t]he object to be obtained," *Chevalier*, 220 A.3d at 1058.

Further context for the PMWA's goals comes from its short-lived predecessor, an earlier Pennsylvania law also designed to protect workers' wages and hours. In 1937, Pennsylvania passed a law capping the legal workweek for most workers at 44 hours as part of Governor George H. Earle's "Little New Deal," a program of progressive state legislation. No. 567, 1937 Laws of Pennsylvania 2766, 2766-2770 (Jul. 2, 1937). *See generally* MARC LINDER, THE AUTOCRATICALLY FLEXIBLE WORKPLACE: A HISTORY OF OVERTIME REGULATION IN THE UNITED STATES 151-241 (2002). Like the later PMWA, the 1937 law aimed to reach workers who did not participate in interstate commerce, which Pennsylvania's leaders correctly understood would be the threshold for the budding FLSA. *Id*. at 240. It also aimed to go farther than the federal law by, among other things, banning overtime work outright, the only state law in America to do so for male workers. *Id*. at 152, 164. But a trial court considering a challenge to the law found the total ban on overtime to be an "unreasonable and capricious" violation of freedom to contract, and his order striking down the statute was ultimately affirmed. *Holgate Bros. Co. et al. v. Bashore et al.*, 45 Dauphin Cty. Rep. 274, 293-294 (Pa. Comm. Pl. Jan. 1, 1938), *aff'd on other grounds*, 200 A. 672 (Pa. 1938).

Some thirty years later, the PMWA finally filled the void in state law without the radical prohibition of overtime, instead combining a minimum wage with an overtime provision  Its goals were recognized by the trial judge in *Chevalier,* the Honorable Stanton Wettick, who observed that "The purpose of the portion of a minimum wage act requiring overtime pay is to increase

employment, reduce overtime, and adequately compensate employees who must work more than a standard forty-hour workweek." No. GD-13-017194, 2014 WL 6909692 at *11 (Pa. Comm. Pl. Oct. 20, 2014). The goal of reducing use of overtime recognized by Judge Wettick is consistent with the FLSA's general approach of applying "financial pressure" through overtime premiums to "spread employment to avoid the extra wage." *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 577 (1942). *See also* Scott D. Miller, *Revitalizing the FLSA*, 19 HOF. LAB. & EMP. L. J. 1, 124 (2001)("A primary purpose of overtime was to penalize private sector employers for working employees over forty hours per week, thus providing an incentive to employ more people fewer hours than fewer employees more hours.").

Considering that the PMWA addresses the same subject as the 1937 law, albeit by using a balanced approach that the 1937 statute fatally lacked, it is reasonable to infer that it constitutes "the former law…upon the same or similar subjects," 1 Pa. Con. Stat. § 1921. And to the extent that overtime was originally viewed as something to be banned, it is not inconsistent to apply the formula for overtime in a manner that discourages its use, particularly in a case where the issue is the compensation owed to employees working shifts of greater than 12 hours long.

### iii. The PMWA Has a Public Policy Against Declining Overtime

AOH argues *Chevalier* and *Verderame* are entirely inapplicable to this case because, under Macklin's pay structure "the regular rate increases based on the presence of an incentive payment, which results in an upward adjustment to the regular rate for purposes of overtime pay." Df.'s Reply Br., ECF 23, at 3-4. AOH contrasts this with the FWW method, where the fixed salary means "that the employee's hourly rate *decreases* as he or she works more hours." *Id.* at 3 (quoting *Verderame*, 31 F. Supp. 3d 702, 704 (E.D. Pa. 2014)). While AOH's structure does not present the same drastic decline in regular rate that existed when applying a 0.5 premium multiplier under

the FWW method, it nonetheless violates the public policy of the PMWA because it creates a declining marginal cost of overtime.

DLI acknowledged the need for overtime to fairly compensate workers and disincentivize employers in its 2022 final rule, which found fault with the FWW Method because "the notion that an employee could work more and earn less—in other words, work longer hours and earn a lower regular rate—is contrary to the purpose of the act and the obligation of the Department to protect workers." 52 Pa. Bull. 2701, 2705 (May 7, 2022).[21] I find this interpretive statement persuasive. *See Hospital Ass'n of Pennsylvania v. MacLeod*, 410 A.2d 731, 734 n.10 (Pa. 1980)("It is established that administrative interpretations, not disturbed by the Legislature, are appropriate guides to legislative intent."). This guidance recognizes what is wrong with working more and earning a lower rate as a result — a problem that I term "declining marginal cost of overtime" — because each additional hour of overtime reduces the regular rate and therefore the resulting overtime rate, especially with a 0.5 premium multiplier.

This problem of declining marginal cost of overtime gives the clearest explanation of why the court in *Chevalier* thought combinations non-hourly forms of payment do not "fit neatly" into the PMWA's default rule:[22] it was not a *mathematical* problem in calculating the regular rate, since it is no harder to add all pay together and divide it by the relevant hours worked; rather, it is a *public policy* problem because, with any fixed payment, necessarily the regular rate declines as

---

[21] AOH highlighted this rulemaking at oral arguments for the principle that *Chevalier* only affected salaried workers. But like *Chevalier*, DLI's analysis makes many informative, general observations about the meaning of the PMWA's overtime rules in the process of explaining how the FWW method fit within those rules.

[22] *Chevalier*, 220 A.3d at 1051.

hours go up, gradually reducing the disincentive on employers to assign overtime work—the *opposite* of what the PMWA is supposed to do.

The PMWA's remedy is to give a heightened multiplier in these cases: recalling that regular rate pay should not count towards the overtime requirement, the only way to ensure a worker who earns a flat rate payment gets the required 1.5 times the regular rate for their overtime work is to apply a heightened premium multiplier. This is the only way to make sure a worker's overtime premium is both *overtime* and a *premium*.

The same phenomenon occurs here. Once AOH adds the fixed bonus to the hourly pay, the regular rate declines for every hour worked, and thus, so does overtime when based directly on that rate.[23] AOH seems to suggest this is no problem because the *overall* amount of money paid still goes up as time goes on, and because the regular rate is still higher with the bonus than without it. But this overlooks the public policy behind the PMWA and the principles applied in cases interpreting it: a worker who works overtime will always earn more money than if they had not worked the overtime; that is, there is always some overtime premium. The problem in *Verderame* was that the premium went down as time went on. *See Verderame*, 31 F.Supp.3d at 705. The same is true here, just at a slower rate of decline. The FLSA contemplates such a decline, according to the Supreme Court in *Missel*. *See* 316 U.S. at 580 ("It is true that the longer the hours the less the rate and the pay per hour."). But Pennsylvania rejected the *Missel* approach, based as it is on freedom of contract. *See Chevalier*, 220 A.3d at 1054-55, 1059 (recognizing that *Missel* was based

---

[23] Appendix Figure 1 illustrates this dynamic. The combined regular rate declines, even when there is hourly pay, because the regular rate *on the flat rate bonus* declines as the hours increase. Here, for example, the regular rate on Macklin's pay with the bonus was $17.50 [hourly rate] + $2.13 [shift differential] + $(100/x) [flat rate divided by $x$ hours worked]; the more $x$ goes up, the lower the combined regular rate will be. The same is true regarding the overtime rate, especially with only a 0.5 premium multiplier.

on the FLSA's "freedom of contract" principle, then noting that the PMWA's preamble explicitly rejects freedom of contract as "illusory."). Thus, an overtime rate that declines below the regular rate is accepted as a risk inherent in free contracting under the FLSA, but against the public policy of the PMWA for arrangements other than day rates under 34 Pa. Code §231.43(b). Macklin's preferred multiplier implements this policy by ensuring the overtime pay exceeds the regular rate.

It might be objected that this is a small issue, but the PMWA does not have *de minimis* exceptions. *See In re Amazon*, 255 A.3d at 208-09. So, there is no basis under the law for attempting to draw a line as to how much of a declining rate of pay is tolerable under the PMWA. And finally, the Statutory Construction Act provides that most laws other than those involving land and the courts "shall be liberally construed to effect their objects and to promote justice," 1 Pa. Con. Stat. § 1928, and the preamble to the PMWA stands out as an unusually strong statement of policy in support of workers.

Considering those objects highlights one last problematic consequence of AOH's preferred interpretation. Macklin points out that allowing AOH to apply the default rule here would leave the door open to treating workers who receive any hourly pay as "hourly" and reducing their non-hourly overtime accordingly, Pl.'s Resp., ECF 19, at 16-17. AOH responds that this is no issue at all, because the statutory minimum wage itself provides a minimum backstop, *see* Oral Arg. Tr., ECF 46, 35:13-23 (Oct. 27, 2025), and because AOH's pay system "is compliant with the Fair Labor Standards Act." Df.'s Reply, ECF 23, at 7. There are two weaknesses in this argument: first, being consistent with the FLSA does not make an interpretation consistent with the PMWA where the two laws may differ; second, a rule that would permit an overtime rate to approach the statutory minimum wage is clearly out of step with the PMWA's public policy.

Macklin's concern is therefore well-founded.  Here the pay is mostly hourly with some non-hourly incentives, but if the default overtime formula applies whenever a worker receives hourly pay and a non-exempted non-hourly pay, an employer could water down the cost of overtime by paying an employee mostly through a flat rate, with some nominal hourly payment attached.  Such an employer could then pay the 0.5 premium which both sides agree is appropriate for hourly wages, on all compensation, effectively neutralizing *Chevalier's* finding about the importance of fairly compensating workers who receive non-hourly pay.[24]

When presented with two reasonable interpretations of the PMWA, one substantially aligned with its underlying policy and one far less so, I predict that the Pennsylvania Supreme Court would pick the more aligned interpretation.

## IV.    Conclusion

Ultimately, I conclude that Macklin has stated a claim under the PMWA. The Act requires payment of overtime at 1.5 times the regular rate, and getting to that 1.5 times for this flat rate bonus requires a 1.5 premium multiplier.  I do not draw broader conclusions about whether all non-hourly pay should receive the heightened multiplier, how to combine different pay types in

---

[24] Notably, the FLSA's regulations contain some commentary acknowledging the need for closing potential loopholes caused by non-hourly pay. *See, e.g.*, 29 C.F.R.  §778.310 (Stating that "[a] premium in the form of a lump sum which is paid for work performed during overtime hours without regard to the number of overtime hours worked does not qualify as an overtime premium" because "If the rule were otherwise, an employer desiring to pay an employee a fixed salary regardless of the number of hours worked in excess of the applicable maximum hours standard could merely label as overtime pay a fixed portion of such salary sufficient to take care of compensation for the maximum number of hours that would be worked." This would violate "[t]he Congressional purpose to effectuate a maximum hours standard by placing a penalty upon the performance of excessive overtime work")

the regular rate or presume to address any other uncertainties acknowledged by this memorandum.

On these facts, however, Plaintiff has stated a claim.


                                                    /s/ Gerald Austin McHugh
                                                   United States District Judge

## V.    Appendix

### Figure 1. Declining Marginal Cost of Overtime



The **solid blue curve** shows Macklin's regular rate pay with the flat rate bonus, and the **solid red curve** shows it without the flat rate bonus, as hourly-only pay. The regular rate *with* the bonus will always be higher than the pay without it because, in both equations, *x* cancels out in the hourly and the shift differential, but not in the $100 bonus, so the flat rate will always add $100/x$ to the 19.63 hourly pay. However, the regular rate declines as the hours accumulate. As a result, so does the overtime premium, represented with the **dashed blue curve**: the inclusion of the flat

rate bonus makes it so that, as the hours increase, the pay due for *all* overtime hours decreases. Only Macklin's proposed 1.5 multiplier, represented by the **dashed purple curve**, results in an overtime premium that pays above the regular rate for all overtime hours. In contrast, the overtime premium for the hourly pay, represented by the **dashed red line**, remains steady at (0.5 x 19.63) per hour.

**Table 1. Equations Used to Generate Graph in Figure 1**

|  | Pay Structure Represented | Equation |
|---|---|---|
| A | Regular Rate, hourly pay only | $y = \dfrac{(17.53x + 2.1036x)}{x}$ |
| B | Regular Rate, combination of hourly + bonus | $y = \dfrac{(17.53x + 2.1036x + 100)}{x}$ |
| C | Overtime premium, hourly pay only | $y = \dfrac{(17.53x + 2.1036x)}{x} \cdot 0.5$ |
| D | Overtime premium, combination, 0.5 multiplier | $y = \left( \dfrac{(17.53x + 2.1036x + 100)}{x} \right) \cdot 0.5$ |
| E | Overtime premium, combination, 1.5 multiplier | $y = \left( \dfrac{(17.53x + 2.1036x + 100)}{x} \right) \cdot 1.5$ |

In each equation in Table 1, *y* represents the rate of pay for each formula, and *x* represents the total hours worked in a given workweek. Thus, each equation gives the hourly rate for every

pay formula, for every total number of hours. In each equation, $17.53x$ represents the base hourly pay, $2.1036x$ represents the shift differential (the additional hourly pay Macklin received for working overnight hours), and 100 represents the flat rate incentive bonus. While the parties agree these sources of income all combine into a single regular rate, they are shown separately in the table to illustrate all three sources of income at once. Relatedly, Equations D and E show how neither side is "double counting" in their preferred calculations—the dispute is over what multiplier is necessary to comply with the statute.

**Figure 2. Total Overtime Payments Under the Parties' Interpretations**



This graph shows the **total overtime payment** (1.5 times the regular rate) owed to Macklin under each party's interpretation of the PMWA. The **solid blue curve** is the same as in Figure 1,

representing the regular rate owed on Macklin's pay, including the hourly pay, the shift differential, and the bonus. At 40 hours, a vertical line signals the start of overtime pay, which must be 1.5 times the regular rate. Since overtime pay cannot include most money counted toward the regular rate (*see* Part III(E)(i), *supra*), the two parties' respective premiums are the full *overtime* pay offered by each interpretation. AOH's proposed reading of the PMWA, the **dashed blue curve**, not only has a declining marginal cost of overtime but also declines well below the regular rate. Only Macklin's reading, the **dashed purple curve**, makes the overtime premium an actual premium over the regular rate.